## WILLIAM FRICK *et al.*

### *v.*

## THE TRUSTEES OF SCHOOLS.

*Filed at Ottawa May 14, 1881.*

1.  ESTOPPEL—*by acquiescence and acts.*  A person who acts as secretary and treasurer of the trustees of schools of a township for eleven years, thereby sanctioning the validity of their acts, and who contracts to convey them a parcel of land for a school site, will be estopped from denying the legality of the election of such trustees, although the poll-books of the election may be lost.

2.  A person who has held office under a board of school trustees for several years, and who has held it out to the public as a legally constituted body, can not avoid his contract with such board by setting up that it had no legal existence.

3.  SCHOOL LAW—*election to select school house site.*  If an election was held in a school district to select a school house site, a party who was present and participated in it, and those claiming under him by deed, will not be allowed to defeat the election by showing that the law was not in all respects observed, and thus avoid his contract to convey ground upon which to erect a school house.

4.  PAYMENT—*evidence of.*  A party sold to a school district a lot of ground for a school house, in 1859, for $25, and on an old book which he kept while treasurer of the trustees of schools of that district this entry was found: "1860, Feb. 18.  By cash paid F. F. (the party) on directors' order No. 2, $25," and the proof showed that possession of the lot was taken, and the same occupied since 1859: *Held,* in the absence of other evidence that the money was paid for something else, it would be presumed that the payment was for the lot.

WRIT OF ERROR to the Circuit Court of Mercer county; the Hon. GEORGE W. PLEASANTS, Judge, presiding.

Mr. B. C. TALIAFERRO, for the plaintiffs in error.

Messrs. PEPPER & WILSON, for the defendants in error.

Mr. JUSTICE CRAIG delivered the opinion of the Court:

This was a bill in equity, brought by the Trustees of Schools of township 13 north, range 4 west, in Mercer county, in connection with the school directors of district

No. 2, in the same township, against William Frick and Hattie Frick, to enforce the specific performance of a contract alleged to have been made in 1859, between the directors of the district and Frederick Frick, under which Frick agreed, for the consideration of $25, to convey one acre of land for a school house site.

On the hearing, on bill, answer, replication and proofs, a decree was rendered substantially as prayed for in the bill, to reverse which the defendants sued out this writ of error.

The first point relied upon by the defendants to reverse the decree is, that complainants failed to prove that at the time the purchase was made there was a board of school trustees in the township, and hence there was no person capable of taking the property as grantee, under the contract. Sec. 35, Rev. Stat. 1845, p. 503, provides: " That each congressional township, as surveyed and laid off by the authorities of the United States, is hereby established a township for school purposes. The business of the township shall be done by three trustees, to be elected by the legal voters of the township, and the said township, upon the election of trustees as aforesaid, as herein provided, shall be a body corporate and politic, by the name and style of trustees, etc., with perpetual succession, etc., and power to sue and be sued." If the legal voters of the township, prior to the date of the alleged contract, held an election and elected trustees, there could be no doubt in regard to the power of the board to hold property purchased for school purposes, in its corporate capacity. It is true, no poll-book showing an election was produced, but it was proven that as early as 1848 the township had three school trustees, who were engaged in the discharge of the duties enjoined upon them by the School law. In 1848 the school trustees, as the law then required, made a return to the county clerk of Mercer county that they had divided the township into two districts, Nos. 1 and 2, the boundaries of each being definitely marked on a plat. This return was dated March 14, 1848, and signed by Frederick Frick, sec-

retary and treasurer of the township. On the 1st day of April, 1854, the trustees made another return to the county clerk, showing that they had redistricted the township, and divided it into six districts. This return was accompanied with a plat, and signed by Frederick Frick, treasurer. On the 7th day of April, 1855, another return was made to the county clerk, showing other changes in the boundaries of the districts, which was also attested by Frederick Frick, treasurer. Again, in 1858, the year before the land in question was purchased, the trustees made other alterations in the boundaries of the districts, and a new plat was returned, attested by Frick, treasurer, as before.

Here was a period of eleven years that Frederick Frick acted as secretary and treasurer of the board of school trustees of the township. He acted as an officer of the board, and sanctioned the validity of their acts and doings. Under such circumstances, when he contracted to sell a lot for a school house site to the directors of district No. 2, knowing, as he did, the title would go to the trustees, he is estopped from denying the legality of the election of the school trustees. *Wood* v. *The Kingston Coal Co.* 48 Ill. 356; *Lombard* v. *Chicago Sinai Congregation,* 64 id. 477.

It would be inequitable to allow him to hold office under the board, and hold it out to the public as a legally constituted body, contract with it, and then, when sued on a contract thus made, set up that the board had no legal existence.

It is next urged, that there was no school district No. 2. The school trustees were required to divide the township into districts, and return a plat thereof to the county clerk. The plats read in evidence dividing the township into school districts, established the existence of district No. 2, and should there be any doubt in regard to the fact, from this evidence, the testimony of George Frick, introduced by defendants, leaves no room for doubt. He testified, in substance, that when the contract was made for the lot, he and Strong and Willets were the directors in the district.

It is next urged, that the lot was never paid for, and no vote of the district was taken to select the site or vote a tax to build the school house. No record of the proceedings of this district can be found prior to 1864, and it became necessary to resort to other evidence to establish what had been done in the district. Wm. P. Strong testified, that an election was held in the fall of 1859, in the grove where the school house now stands, to select a school house site, and that all the votes cast were for the site where the house now stands; that Frick was present and wrote most of the tickets used at the election. This is corroborated by other evidence. If it be true that all the formalities of the law were not observed in holding the election,—if, as the evidence shows, Frick was present and participated in the election,—public policy forbids Frick, and defendants who claim title by deed under him, from defeating the election on the ground that the law was not in all respects fully observed. *The People* v. *Waite,* 70 Ill. 25.

We now come to the question whether the lot was paid for by the district. It appears from the evidence, that a school house was erected on the lot in 1859; the lot was fenced and a well dug, and it has been used and occupied by the district as a school house site from 1859 down to the present date. There is some conflict in the evidence whether the $25 which the district agreed to pay Frick for the lot has been paid or not, but the decided preponderance of the evidence is that the money was paid. An old book, which Frick kept while he was treasurer, was found and introduced in evidence. In this book an entry was found, as follows: " 1860, Feb. 18. By cash paid F. Frick, on directors' order No. 2, $25." This entry shows, beyond dispute, that the district paid Frick the amount of money which was agreed to be paid for the lot, and in the absence of other evidence that this money was paid for something else, the presumption would be that it was paid for the lot. Again, the fact that the district took possession of the lot, and held and used it without objection

from Frick, or without any effort on his part to obtain possession of the property, in connection with the credit in his book for the exact amount agreed to be paid, seems ample to establish the fact that the land was paid for. There is some evidence in the record that Frick had other dealings with the district, and it might be true that this $25 was paid on something else, but it was not shown that the district was indebted to Frick in the sum of $25 for any other thing except the school house site, and the presumption is the money was paid for that purpose.

The decree of the circuit court will be affirmed.

*Decree affirmed.*